MALCOLM R. BLACK, APPELLANT, v. NATIONAL UNION FIRE INSURANCE COMPANY, APPELLEE.

FILED JANUARY 29, 1932. No. 28084.

*John J. Ledwith* and *Fred M. Deweese,* for appellant.

*Crofoot, Fraser, Connolly & Stryker* and *James T. English, contra.*

Heard before GOSS, C. J., EBERLY and PAINE, JJ., and BEGLEY and ELDRED, District Judges.

PER CURIAM.

This is an action instituted by appellant Black to recover the sum of $1,500 and interest, alleged to be due under a fire insurance policy issued by the appellee to one L. K. Forney and subsequently assigned to appellant. The subject of insurance was a dwelling-house located on a farm in Clarke county, Iowa, which was destroyed by fire on February 24, 1928. There was a trial to a jury, resulting in a verdict for the insurance company. From the order of the trial court overruling his motion for a new trial, plaintiff appeals.

It appears that on the 14th day of November, 1927, Malcolm R. Black, appellant, as the then owner of the real estate involved, executed a warranty deed in proper form purporting to convey the land described therein, being the land on which the house in suit was located, to J. L. Ritchardson and Anese Ritchardson, husband and wife. This deed was filed for record in the office of the county recorder of Clarke county, Iowa, on November 23, 1927, and was mailed by the county recorder to the grantee therein named, who thereafter retained it. Appellee alleges that, this conveyance having been made and entered into prior to the date of the fire, the appellant at the time of the fire had no title to the real estate, and by reason of the conveyance, under the terms of the policy in suit, was not entitled to recover thereon.

The facts in the record disclose without question that in February, 1927, the appellant acquired the land on which the house then insured by the terms of the policy in suit was situated.

On October 28, 1927, the appellant, as owner of the premises, and as "party of the first part," entered into a sale contract in writing with one J. L. Ritchardson and wife, as "party of the second part," which in terms evidenced the fact that the "party of the first part" had sold to the "party of the second part" the farm therein described (on which the building in question was situated), "together with all appurtenances thereto belonging and now thereon," for $11,182.50, $250 of which was cash, $450 payable on or before March 1, 1928, and the balance by the assumption by second party of mortgages in said contract described and referred to. By the terms of this written instrument the second party also agreed to carry $2,000 insurance on the property, payable in case of loss to first party. First party also agreed therein to furnish "a warranty deed and a good and merchantable abstract of title, on or before March 1, 1928." and to pay for insurance on buildings up to March 1, 1928, and agreed to give possession by March 1, 1928.

Some time after the making of this contract, Ritchard-, son was asked to accept a warranty deed in terms transferring the land to him subject to the unpaid balance of the $15,000 mortgage to the Lincoln Joint Stock Land Bank of Lincoln, and thereupon, with his wife, to execute an extension agreement extending the time of the payment of the unpaid balance. The substance of his answer to this proposition may be epitomized as follows: "I told him they could change the deed over to me before March 1st, if it didn't interfere with the contract any, that the contract went ahead the same. You see I was to pay $432.50 more money before I was to get the deed and I wasn't to pay this over until the 1st of March." Thereupon Black executed the deed of November 14, 1927, hereinbefore referred to. Following this Ritchardson and wife, it appears, executed the extension agreement. It is also stipulated that the mortgage so extended remained on record until February 23, 1928. On that date J. L. Ritchardson and wife, Anese, executed two mortgages to the Lincoln Joint Stock Land Bank, one securing the sum of $6,500 was thereupon recorded in book 55 of mortgages at page 203, and the other securing the sum of $4,000 (both covering the same premises) was recorded in book 55 at page 204. After these mortgages last referred to had been recorded, the Lincoln Joint Stock Land Bank executed and filed a release of the first described mortgage, dated February 29, 1928, which was recorded in book 22 of mortgages at page 443 of the mortgage records of Clarke county, Iowa. It may be said that there is no evidence as to the facts of the transaction, which the existence of the last two mortgages referred to suggests must have taken place between the execution of the extension agreement heretofore referred to and the 23d day of February, 1928. It is also stipulated that no consent was ever asked of, or given by, the defendant insurance company to the conveyance of the property in question, or of any new or change of incumbrances on the land.

The policy in suit contains the following provision: "IV.

Unless otherwise provided by agreement of this company this policy shall be void: * * * (d) If the interest of the insured be other than unconditional and sole ownership; or (e) if the subject of insurance be a building on ground not owned by the insured; or (f) if any change other than by death of the insured, whether by legal proceedings, judgment, voluntary act of the insured or otherwise, take place in the interest, title, possession or use of the subject of insurance, if such change in the possession or use makes the risk more hazardous; or (g) if the subject of insurance or a part thereof (as to the part so incumbered) be or become incumbered by lien, mortgage or otherwise created by voluntary act of the insured or within his control." It was also stipulated by the parties that the contract sued on was an Iowa contract, and governed by the statutes of Iowa as construed by the supreme court of that jurisdiction. In this respect the record proceeds as follows: "It is hereby stipulated and agreed between the parties that the following statutes were effective on the date of the alleged loss by fire of the plaintiff's house, and they are still effective and are the pertinent statutes relied upon by both parties in this action, and they are set forth in the Code of Iowa for 1924 as follows: (Then there is set forth verbatim sections 8976, 8977, 8978, 8980, 8981 of the Code of Iowa for 1924)."

The questions presented for review are: Has the trial court properly construed the statutes of the state of Iowa which are set out in the record as applied to the facts embraced in the bill of exceptions by stipulation and evidence? and, is the verdict supported by sufficient evidence? This tribunal may not take judicial notice of the terms of the statutes of a foreign state nor of the construction given such statutes by the superior courts of such foreign state. Thus, in the instant case, both the terms of the statute of a foreign state, and their accepted construction in its tribunals, are alike questions of fact to be established by proper proof. Conceding that the stipulation in the record fully covers the matter of the terms of the statutes

of Iowa, there is nothing in the stipulation relating to their accepted construction by the courts of that state. "The unwritten or common law of any other territory, state, or foreign government, may be proved as facts by parol evidence, and the books of reports of cases adjudged in their courts may also be admitted as presumptive evidence of such law." Comp. St. 1929, sec. 20-1269. See, also, *Steinke v. Dobson*, 90 Neb. 616; 5 Ency. of Evidence, 830, 831; 23 C. J. 131.

In the case before us the bill of exceptions fails to show that any proof was made in the trial court as to the proper construction of the laws of Iowa as made by the supreme court of that state. Taking this omission as a fact, in connection with all the facts which appear in the record, it does not affirmatively appear that the trial court erred in the instructions excepted to, and it is plain that the verdict of the jury has ample support in the evidence which was submitted to them.

The action of the trial court we deem, in all things, correct, and its judgment is

AFFIRMED.